UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PEABODY MANAGEMENT, INC., )
                                        )
               Plaintiff, )
      v. )         Civil Action No.:
                                          )
PEABODY PAINTING AND )
WATERPROOFING, INC., )
                                          )
                                          )
            Defendant. )

---

## COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION

---

### PARTIES AND JURISDICTION

1.     Plaintiff, Peabody Management, Inc., is a Tennessee corporation with its principal place of business at 100 Peabody Place, Suite 1400, Memphis, Tennessee 38103.

2.     Defendant, Peabody Painting and Waterproofing, Inc. ("Peabody Painting" or "Defendant"), is a Florida corporation with its principal place of business at 8001 Vine Crest Avenue, Suite 5, Louisville, Kentucky 40222, and is transacting business throughout most of the United States, including in this judicial district.

3.     This Court has jurisdiction because: (a) this is a civil action arising under the Trademark Laws of the United States, Sections 32 and 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a); (b) this is a civil action between citizens of different states in which the value of the matter in controversy exceeds the amount of seventy-five

thousand dollars ($75,000.00), exclusive of interest and costs, in accordance with the provisions of 28 U.S.C. § 1332; and (c) Peabody's State statutory and common law claims are joined and related pursuant to 28 U.S.C. §1338(b) and entitled to supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c).

## FACTS

### Peabody Management's Famous PEABODY and PEABODY DUCK Marks

4.      Peabody Management, Inc., itself and through its affiliated businesses (hereinafter collectively "Peabody Management"), has been offering in interstate commerce real estate management and leasing, real estate development, hotel, hotel management, restaurant, business meeting, entertainment and related services and collateral goods under the marks THE PEABODY and THE PEABODY (Stylized in script font), a logo featuring three ducks, a logo featuring two ducks, and various other marks featuring the word "PEABODY," the word "DUCK(S)," and/or other duck imagery.   (Collectively, the marks are hereinafter referred to as the "PEABODY and PEABODY DUCK Marks").

5.      Peabody Management owns, *inter alia*, all intellectual property rights related to The Peabody Hotels, which are famed luxury hotels located in Memphis, Tennessee; Orlando, Florida; and Little Rock, Arkansas.  Copies of brochures featuring The Peabody Hotels, their services, and their collateral goods are attached hereto as Exhibits 1 and 2.

6.      Peabody Management also owns the intellectual property rights for the development, leasing and management of real estate properties under marks incorporating the term PEABODY and imagery of a duck, including the "Peabody Place" development in Memphis.  A copy of a brochure featuring Peabody Place is attached hereto as Exhibit 3.

-2-

7.     Peabody Management, as a business policy, has established and maintains high standards of service and is renowned for these high-quality real estate, hotel and other services.

8.     The Peabody Memphis, the original Peabody Hotel, first began operations by Peabody Management's predecessors in 1869.  The Peabody Orlando Hotel was opened in 1986.  The Peabody Little Rock Hotel opened in January 2002, following many months of pre-opening publicity.

9.     For the more than 135 years since the initial opening in Memphis, The Peabody Hotels have been and continue to be preeminent in their field and have long enjoyed a national reputation as world-class luxury hotels.

10.     By virtue of its historical beginnings in Memphis, and refurbishment to its historic grandeur by Peabody Management beginning in the mid 1970s, The Peabody Memphis Hotel is among the most famous hotels in the United States, and is listed on the National Register of Historic Places.  The hotel was cited by the United States Department of the Interior as one of the country's most outstanding preservation case studies.  As a result of these and other honors, the PEABODY and PEABODY DUCK Marks are favorably associated with superior historic hotel renovation and construction projects.

11.     The reconstruction and refurbishment of The Peabody Memphis was followed by the development of Peabody Place, a mixed-use development, consisting of commercial, office, and residential space, anchored by a retail and entertainment center that features a theater and many restaurants and bars.  Peabody Place is adjacent to The Peabody Memphis.

12.     The Peabody Hotels hold numerous awards, including the Mobil Four-Star Award and the AAA Four Diamond Award.  They have also been named as one of *Travel & Leisure's* World's Best Business Hotels, among Zagat's Top 100 Hotels in the United States, and

-3-

to *Facilities and Destinations* magazine's "Hotels on the Elite List."  The Hotels are also members of the Preferred Hotels & Resorts Worldwide Association.

13.     The fame of The Peabody Hotels has been particularly enhanced by the Hotels' trademark signature event – The Peabody Duck March, in which trained live mallard ducks march twice daily through each hotel lobby and into or from the hotels' fountains where they spend the day swimming.

14.     Over the years, The Peabody Hotels, including the famous Peabody Duck March, have received a great deal of publicity, evidenced by voluminous articles in newspapers, magazines, journals and trade publications.

15.     The Peabody Hotels and their famous ducks have also been featured on numerous television broadcasts, including the Oprah Winfrey Show, the PBS Antiques Roadshow, and many popular cable channel programs.

16.     In just 20 years from 1981 – when the restoration of The Peabody Memphis was completed – until 2001, The Peabody Memphis and Peabody Orlando hosted more than 10 million overnight guests, combined.  Since then, millions more overnight guests have stayed at The Peabody Hotels.  Additionally, vast numbers of other guests have visited the Hotels, for meals at the restaurants, for entertainment events, and for social and business meetings.

17.     Guests of The Peabody Hotels visit from all over the United States.  The Hotels have hosted conferences and conventions, as well as individual business travelers and other guests, representing numerous industries.  In particular, the Hotels have been the sites of conferences and conventions for the restaurant, real estate development, construction, and building maintenance industries.

M GMG 1049601 v1
0-0 10/19/2007

18.     Since well before 2001, Peabody Management has offered and promoted its services and goods on the Internet through websites under many domain names.  Currently, the domains include *peabodyhotelgroup.com*, *peabodyhotels.com*, *peabodyorlando.com*, *peabodymemphis.com*, *peabodylittlerock.com*, *peabodygalleria.com*, and *peabodyplace.com,* and collectively attract over one million unique visitor hits each year.

19.     Peabody Management has also obtained federal registrations for many of the PEABODY and PEABODY DUCK Marks as set forth below.  By virtue of its extensive use and registration of such PEABODY and PEABODY DUCK Marks, individually and collectively, Peabody Management has developed extensive, distinctive and famous rights in the combination of the word "PEABODY" with the word "DUCK" and/or imagery of ducks.

20.     Given the event's fame and distinctiveness, Peabody Management obtained a federal registration of The Peabody Duck March itself, as a motion mark, as set forth below.

21.     THE PEABODY mark is often featured in a stylized script-style font, which has also been federally registered as set forth below.

22.     Among others, Peabody Management owns the following valid and subsisting U.S. federal registrations for its PEABODY and PEABODY DUCK Marks, which provide constructive notice of Peabody Management's rights:

| Mark | Reg. No. Reg. Date | Date of First Use | Goods or Services |
|---|---|---|---|
|  | 2,146,524 3/24/98 | 9/94 | Real estate management services and leasing of real property (Class 36); real estate development services (Class 37); parking lot services (Class 39) |

| Mark | Reg. No.<br><br>Reg. Date | Date of First Use | Goods or Services |
|---|---|---|---|
|  | 2,146,523<br><br>3/24/98 | 9/94 | Real estate management services and leasing of real property (Class 36); real estate development services (Class 37); parking lot services (Class 39) |
| THE PEABODY | 2,596,888<br><br>7/23/02 | Class 35<br>9/81<br><br>Class 42<br>1869 | Providing facilities for business meetings (Class 35); providing facilities for banquets, hotel services, and hotel catering and concierge services (Class 42) |
| THE PEABODY | 2,577,359<br><br>6/11/02 | 1987 | Non-metal key rings; brass plaques (Class 20) |
| THE PEABODY | 2,575,287<br><br>6/4/02 | 1988 | Ornamental magnets; mouse pads (Class 9) |
| THE PEABODY | 2,596,889<br><br>7/23/02 | 3/90 | Watches (Class 14) |
| THE PEABODY | 2,569,232<br><br>5/14/02 | 1988 | Books, namely children's books and books about historical events; letter openers; pens (Class 16) |
| THE PEABODY | 2,569,231<br><br>5/14/02 | 1988 | Golf bags; golf balls; golf repair tools; golf ball markers; bath toys; Christmas tree ornaments (Class 28) |
| THE PEABODY | 2,596,887<br><br>7/23/02 | 1988 | Bath and beach towels; golf towels; bed blankets (Class 24) |
| THE PEABODY | 2,590,522<br><br>7/9/02 | 1993 | Beverage glassware; mugs; ice buckets; toddlers' sipping cups (Class 21) |

| Mark | Reg. No. Reg. Date | Date of First Use | Goods or Services |
|---|---|---|---|
| THE PEABODY | 2,608,663 8/20/02 | 1993 | Bathrobes; terrycloth hats; ball caps; straw hats; sun visors; sun hats; rain hats; golf shirts; t-shirts; casual shirts; sweatshirts; sweatpants; sweater vests; sweaters; socks; pajamas; boxer shorts; jackets; swimsuits (Class 25) |
| THE PEABODY | 2,613,949 9/3/02 | 1985 | Leather luggage tags; tote bags; duffel bags made of canvas; and general merchandise and travel bags made of leather and canvas; purses; umbrellas (Class 18) |
| *The Peabody* | 1,535,837 4/18/89 | 1869 | Hotel services (Class 42) |
| *The Peabody* | 2,603,576 8/6/02 | Class 35 9/81 Class 42 1869 | Providing facilities for business meetings (Class 35); providing facilities for banquets, hotel services, and hotel catering and concierge services (Class 42) |
| *The Peabody* | 2,670,916 1/7/03 | 3/99 | Mouse pads (Class 9) |
| *The Peabody* | 2,569,229 5/14/02 | 1988 | Golf bags; golf balls; golf repair tools; golf ball markers; bath toys; Christmas tree ornaments (Class 28) |
| *The Peabody* | 2,606,585 8/13/02 | 1985 | Leather luggage tags; tote bags; duffel bags made of canvas; and general merchandise and travel bags made of leather and canvas; purses; umbrellas (Class 18) |

| Mark | Reg. No. Reg. Date | Date of First Use | Goods or Services |
|---|---|---|---|
| *The Peabody* | 2,569,230 5/14/02 | 1987 | Books, namely children's books and books about historical events; letter openers; pens (Class 16) |
| *The Peabody* | 2,572,874 5/28/02 | 1993 | Aprons; bathrobes; terrycloth hats; ball caps; straw hats; sun visors; sun hats; rain hats; golf shirts; t-shirts; casual shirts; sweatshirts; sweatpants; sweater vests; sweaters; socks; pajamas; boxer shorts; jackets; swimsuits (Class 25) |
| *The Peabody* | 2,570,836 5/21/02 | 1988 | Bath towels; golf towels; blankets (Class 24) |
| *The Peabody* | 2,590,521 7/9/02 | 1993 | Beverage glassware; mugs; ice buckets; toddlers' sipping cups (Class 20) |
| *The Peabody* | 2,572,873 5/28/02 | 3/90 | Watches (Class 14) |
| *The Peabody* | 2,623,024 9/24/02 | 1987 | Non-metal key rings; brass plaques (Class 20) |
| [ducks logo] | 2,580,945 6/18/02 | 1985 | Luggage tags; tote bags; duffel bags; and various bags made of leather, canvas, and terrycloth, namely, athletic bags, beach bags, carry-on bags, travel bags, and gym bags; purses; umbrellas (Class 18) |

M GMG 1049601 v1
0-0 10/19/2007

| Mark | Reg. No.<br><br>Reg. Date | Date of<br>First Use | Goods or Services |
|---|---|---|---|
|  | 2,469,553<br><br>7/17/01 | 1993 | Aprons; bathrobes; bath slippers; ball caps; golf shirts; t-shirts; casual shirts; sweatshirts; sweatpants (Class 25) |
|  | 2,645,098<br><br>11/5/02 | 1993 | Beverage glassware; mugs; ice buckets; toddlers' sipping cups (Class 21) |
|  | 1,391,956<br><br>4/29/86 | 9/78 | Hotel services (Class 42) |
|  | 2,453,227<br><br>5/22/01 | 1988 | Golf bags; golf balls; divot-fixers; ball markers (Class 28) |
|  | 2,590,524<br><br>7/9/02 | 1981 | Providing facilities for business meetings (Class 35); hotel services; providing banquet facilities for special occasions; hospitality services in the nature of weddings, receptions, bar mitzvahs and bas mitzvahs, anniversary celebrations, birthday parties, holiday parties and other social events; catering services (Class 42) |
|  | 2,467,741<br><br>7/10/01 | 1988 | Bath towels, golf towels (Class 24) |
| <br><br>Duck March Visual Motion Mark | 2,710,415<br><br>4/29/03 | 1940 | Providing facilities for business meetings (Class 35); providing facilities for banquets; hotel services; hotel catering and concierge services (Class 42) |

M GMG 1049601 v1
0-0 10/19/2007

| Mark | Reg. No.<br><br>Reg. Date | Date of<br>First Use | Goods or Services |
|---|---|---|---|
|  | 1,527,482<br><br>2/28/89 | 6/83 | Restaurant services (class 42) |
| AMERICA'S ONLY 5-DUCK MEETING HOTELS | 2,600,163<br><br>7/30/02 | 9/91 | Providing facilities for business meetings (Class 35);  providing facilities for banquets; hotel services, hotel catering and concierge services (Class 42) |
| ONLY 5-DUCK MEETING HOTEL | 2,611,508<br><br>8/27/02 | 9/91 | Providing facilities for business meetings (Class 35); providing facilities for banquets; hotel services; and hotel catering and concierge services (Class 42) |
|  | 3,210,539<br><br>2/20/07 | 8/10/05 | Sleep products, namely, mattresses, spring mattresses, box springs, mattress foundations and pillows (Class 20) |
| PEABODY DREAM  BED | 3,032,640<br>12/20/05 | 8/10/05 | Sleep products, namely, mattresses, spring mattresses, box springs, mattress foundations and pillows (Class 20) |
| PEABODY DREAM  BED | 3,159,335<br><br>10/17/06 | 1/03 | Hotel services, namely, feature of hotel services comprising mattresses provided in hotel rooms and suites (Class 43) |
| THE PEABODY GALLERIA | 3,208,517<br><br>2/13/07 | Class 16<br>11/1/05<br><br>Class 35<br>12/28/05 | Catalogs featuring sleepwear, sleep products, linens, bathing products, clothing, crystal figures, ceramic figurines, kitchenware and books (Class 16); and<br><br>Catalog ordering services and electronic catalog services featuring sleepwear, sleep products, linens, bathing products, clothing, crystal figures, ceramic figurines, kitchenware and books (Class 35) |
| PEABODY HOTEL GROUP | 2,596,890<br><br>7/23/02 | 3/19/90 | Hotel management services for others (Class 35) |

| Mark | Reg. No.<br>Reg. Date | Date of First Use | Goods or Services |
|---|---|---|---|
| PEABODY SERVICE EXCELLENCE | 2,163,146<br>6/9/98 | 11/95 | Providing facilities for business meetings (Class 35); hotel services, and hospitality industry services, namely, providing convention facilities (Class 42) |
| PEABODY'S STANDARDS OF OUTSTANDING SERVICE | 2,131,758<br>1/27/98 | 1/8/96 | Educational services, namely, conducting training classes, seminars, workshops and mentoring programs, and distributing course materials in connection therewith, in the field of customer service, directed to employees in the hotel and hospitality industries (Class 41) |
| THE LEGEND OF THE DUCKS | 2,781,038<br>11/11/03 | Class 35 1981<br><br>Class 42 1/1/81 | Providing facilities for business meetings (Class 35); providing facilities for banquets; hotel services; hotel catering and concierge services (Class 42) |
|  | 3,108,549<br>6/27/06 | 5/6/05 | Entertainment services in the nature of periodic live music concert party events (Class 41) |
| THE PEABODY ROOFTOP PARTY | 2,947,355<br>5/10/05 | 4/15/02 | Entertainment services in the nature of periodic live music concert party events (Class 41) |

These registrations are *prima facie* evidence of the validity of the registered marks, of Peabody Management's ownership of the marks, and of Peabody Management's exclusive right to use the marks in connection with the goods or services specified in the registrations in accordance with 15 U.S.C. §§ 1057(b) and 1115(a).  Registration Nos. 2,146,524; 2,146,523; 1,535,837; 2,469,553; 1,391,956; 2,453,227; 2,467,741; 1,527,482; 2,163,146; and 2,131,758 are incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b), and such registrations constitute conclusive evidence of the validity of the registered marks, of Peabody Management's

ownership of the marks, and of Peabody Management's exclusive right to use the marks in connection with the goods or services specified in the registration.  15 U.S.C. § 1115(b).

23.      Peabody Management, itself, and through its related companies, has sold hundreds of millions of dollars worth of services and a wide variety of collateral goods under the PEABODY and PEABODY DUCK Marks, and has spent many millions of dollars advertising and promoting these services and goods.

24.      As a result of the extensive sales, promotion by Peabody Management, and publicity and news reports generated by third parties, the PEABODY Marks and many of the PEABODY DUCK Marks became famous prior to 2001, and represent an enormously valuable goodwill owned by Peabody Management.

### Defendant's Adoption and Use of the Infringing PEABODY and Duck Logo Marks

25.      While working for another painting company, and prior to the formation of Defendant, Defendant's owner and founder, Kevin Smither ("Smither"), stayed at The Peabody Orlando Hotel while attending a conference important to his employer's painting trade.

26.      Subsequently, in or about May 2001, Smither started his own company and gave it the trade name "Peabody Painting" – a name inspired by the visit he had made to The Peabody Hotel.  That company was incorporated as "Peabody Painting & Weatherproofing, Inc."

27.      Smither adopted for Peabody Painting & Weatherproofing, Inc. a logo featuring the name "Peabody Painting" and a design of a mallard duck.  Neither Smither nor anyone on his behalf conducted any investigations or searches of the United States or state trademark registers prior to adopting the name and logo.

28.      Upon information and belief, the artwork for the duck in Peabody Painting & Weatherproofing, Inc.'s logo was created by working from a copy of a Peabody Hotel website

-12-

and Peabody Hotel promotional materials in Smither's possession from his earlier visit to the Peabody Orlando Hotel.

29.     In or about November 2001, Peabody Painting & Weatherproofing, Inc. was dissolved.  Smither subsequently incorporated a new company, Defendant herein, known as "Peabody Painting and Waterproofing, Inc."  He continued the same business activities, and continued to use as a trademark the name "Peabody Painting" in combination with the same logo featuring a mallard duck.  (The mark is hereinafter referred to as the "Infringing Name and Logo Mark").

30.     Defendant subsequently adopted and began using the mark, "WHEN YOU SEE THE TRUCK WITH THE SIGN OF THE DUCK YOU KNOW YOU'RE IN LUCK WITH…PEABODY PAINTING AND WATERPROOFING & Duck Design," a mark which prominently features the name PEABODY in a stylized script font and a mallard duck design, as set forth below (hereinafter referred to as the "Infringing Slogan Mark"):



31.     Thereafter, in or about May 2003, Smither again stayed at The Peabody Orlando Hotel, and in or about November 2003, stayed at The Peabody Memphis Hotel.

32.     Defendant subsequently applied to register the Infringing Slogan Mark with the United States Patent and Trademark Office for services described as "Painting; Waterproofing of commercial buildings," Serial No. 78/504,160.  Neither Defendant nor its counsel conducted any

-13-

investigations or searches of the United States or state trademark registers prior to filing its application.

33.     On November 3, 2005, Peabody Management timely filed an extension of time to file an opposition to the application, and on April 3, 2006, timely filed an opposition to the application with the U.S. Trademark Trial & Appeal Board.  The proceeding is pending, but has not yet advanced to the trial testimony period.  Upon information and belief, if Peabody Management prevails in the opposition proceeding, Defendant will not halt its use of the Infringing Slogan Mark at issue in both the opposition proceeding and this action.

34.     The Infringing Name and Logo Mark and the Infringing Slogan Mark (collectively, the "Infringing Marks"), which feature the combination of the word "PEABODY" with the word "DUCK" and/or a design of a mallard duck, were adopted, used, and sought to be registered without Peabody Management's consent or permission.

35.     Defendant directly provides its services under the Infringing Marks in more than 40 States, including Tennessee, and within this judicial district.  Samples of materials showing use of the Infringing Marks in connection with Defendant's provision of services are attached hereto as Exhibits 4(a) – (c).

36.     Defendant directly provides its services under the Infringing Marks to customers in the restaurant and/or hospitality industries.

-14-

## COUNT I

## TRADEMARK INFRINGEMENT UNDER SECTION 32(1) OF THE LANHAM ACT

37.     Peabody Management repeats and re-alleges each and every allegation of paragraphs 1-36 as though fully set forth herein.

38.     Peabody Management's above-described federal service mark and trademark registrations are in full force and effect.  These registered marks have never been abandoned and are widely used by Peabody Management in connection with the services and goods set forth therein.

39.     Defendant's unauthorized use of the Infringing Marks as set forth herein, is likely to cause confusion, mistake, or deception as to the source or origin of Defendant's services, or to result in the mistaken belief that Defendant and its services are sponsored, approved or licensed by Peabody Management, or are otherwise connected or associated with Peabody Management, its real estate properties, and/or The Peabody Hotels.

40.     Defendant's use of the Infringing Marks reproduces, copies, colorably imitates, and constitutes service mark and trademark infringement of the PEABODY and PEABODY DUCK Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41.     The Defendant's unauthorized adoption and use of the Infringing Marks were willful and intentional, and done in a deliberate and bad-faith attempt to capitalize on the goodwill of The Peabody Hotels and the PEABODY and PEABODY DUCK Marks.

42.     By reason of Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer great damage and injury to its business, reputation and goodwill.  The full extent of Peabody Management's damages is not yet determined.

43.      Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

## COUNT II

## UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT

44.      Peabody Management repeats and re-alleges each and every allegation of paragraphs 1- 36 as though fully set forth herein.

45.      Defendant's unauthorized use of the Infringing Marks, including use of the term "PEABODY" in combination with the term "DUCK" and duck imagery as set forth herein, is likely to cause confusion, to cause mistake, and/or to deceive consumers and others as to the affiliation, connection, or association of Defendant with Peabody Management and its Peabody Hotels and real estate properties; and/or to falsely represent that the services or goods promoted, sold, and/or offered for sale by Defendant originate from, or have been sponsored, approved, or licensed by, Peabody Management, its real estate properties or The Peabody Hotels.

46.      Defendant's unauthorized use of the Infringing Marks constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.      Defendant's aforesaid acts were willful and intentional, and done in a deliberate and bad-faith attempt to capitalize on the goodwill and reputation of Peabody Management, The Peabody Hotels and the PEABODY and PEABODY DUCK Marks.

48.      By reason of Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.   The full extent of Peabody Management's damages is not yet determined.

49.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

## COUNT III

## TRADEMARK DILUTION UNDER SECTION 43(c) OF THE LANHAM ACT

50.     Peabody Management repeats and re-alleges each and every allegation of paragraphs 1- 36 as though fully set forth herein.

51.     Prior to Defendant's adoption and use of the Infringing Marks, the PEABODY and PEABODY DUCK Marks had become famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. §§ 1125(c)(1) and (2), by virtue of their strength; their inherent and acquired distinctiveness; the duration, extent, and geographic reach of advertising and publicity by Peabody Management and third parties; the amount, volume and geographical extent of the sales of services and goods offered to consumers; the extent of recognition of the PEABODY and PEABODY DUCK Marks by a wide variety of consumers traveling from a wide geographic area; and the extensive federal registrations for the PEABODY and PEABODY DUCK Marks on the Principal Register.

52.     Defendant's unauthorized use of the term "PEABODY" in combination with the term "DUCK," the use of poor quality duck imagery, and the use of an unprofessional, rhyming jingle slogan in the Infringing Marks as set forth herein has caused and is likely to continue to cause dilution by tarnishment and by blurring of the distinctive quality of Peabody Management's famous PEABODY and PEABODY DUCK Marks in violation of 15 U.S.C. § 1125(c)(1).

-17-

53.     Defendant's aforesaid acts were done willfully and intentionally, with full knowledge of the fame and popularity of The Peabody Hotels and the PEABODY and PEABODY DUCK Marks, and done in a deliberate attempt to capitalize on the goodwill and reputation of Peabody Management and The Peabody Hotels.

54.     By reason of Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.  The full extent of Peabody Management's damages is not yet determined.

55.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

## COUNT IV

### TRADEMARK DILUTION
### UNDER TENNESSEE CODE § 47-25-513(a)

56.     Peabody Management repeats and re-alleges each and every allegation of paragraphs 1 - 36 as though fully set forth herein.

57.     Prior to Defendant's adoption and use of the Infringing Marks, Peabody Management's PEABODY and PEABODY DUCK Marks had become distinctive and famous in the State of Tennessee within the meaning of Tenn. Code. Ann. § 47-25-513(a), by virtue of their strength; inherent and acquired distinctiveness; the duration, extent, and geographic reach of advertising and publicity in this State by Peabody Management and third parties; the amount, volume and geographical extent of the sales of services and goods offered to consumers; the channels of trade for the services and goods with which the marks are used; the degree of recognition of the PEABODY and PEABODY DUCK Marks in the trading areas and channels

-18-

of trade in Tennessee used by both Peabody Management and Defendant; the lack of use by third parties of marks incorporating the combination of the word "PEABODY" with the word "DUCKS" and/or duck imagery; and the extensive federal registrations for the PEABODY and PEABODY DUCK Marks on the Principal Register.

58.     Defendant's unauthorized use of the term "PEABODY" in combination with the term "DUCK" and duck imagery in the Infringing Marks as alleged herein has caused and is likely to continue to cause dilution of Peabody Management's famous PEABODY and PEABODY DUCK Marks in violation of Tenn. Code. Ann. § 47-25-513.

59.     Defendant's aforesaid acts were done willfully and intentionally with full knowledge of the fame and popularity of The Peabody Hotels and the PEABODY and PEABODY DUCK Marks, and done in a deliberate attempt to capitalize on the goodwill and reputation of Peabody Management and The Peabody Hotels.

60.     By reason of  Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.  The full extent of Peabody Management's damages is not yet determined.

61.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

## COUNT V

### TRADEMARK INFRINGEMENT
### UNDER TENNESSEE COMMON LAW

62.     Peabody Management repeats and re-alleges each and every allegation of paragraphs 1- 36 as though fully set forth herein.

-19-

63.     Peabody Management is the owner of all right, title and interest in and to the PEABODY and PEABODY DUCK Marks, as described above.  The PEABODY and PEABODY DUCK Marks are inherently distinctive and/or have acquired secondary meaning in Tennessee.

64.     Defendant's unauthorized use of the word "PEABODY" in combination with the word "DUCK" and duck imagery is likely to cause confusion, mistake, or deception as to the source or origin of Defendant's services, or to result in the mistaken belief that Defendant and its services are sponsored, approved or licensed by Peabody Management, or are otherwise connected or associated with Peabody Management, its real estate properties, and/or The Peabody Hotels.

65.     Defendant's unauthorized use of the Infringing Marks constitutes trademark infringement in violation of the common law of the State of Tennessee.

66.     Defendant's aforesaid acts were done willfully and intentionally, with full knowledge of the fame and popularity of The Peabody Hotels and the PEABODY and PEABODY DUCK Marks, and done in a deliberate attempt to capitalize on the goodwill and reputation of Peabody Management and The Peabody Hotels.

67.     By reason of Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.  The full extent of Peabody Management's damages is not yet determined.

68.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

-20-

## COUNT VI

### UNFAIR COMPETITION UNDER
### TENNESSEE COMMON LAW

69.     Peabody Management repeats and re-alleges each and every allegation of paragraphs 1- 36 as though fully set forth herein.

70.     Defendants aforesaid acts were committed with the intent to deceive, and were calculated to mislead, the consuming public as to the source or origin of Defendants' services.

71.     Defendant's aforesaid acts have deceived and mislead the consuming public as to the source or origin of Defendants' services.

72.     Defendant's aforesaid acts constitute unfair competition in violation of the common law of the State of Tennessee.

73.     Defendant's aforesaid acts were done willfully in a deliberate attempt to capitalize on the goodwill and reputation of Peabody Management and The Peabody Hotels.

74.     By reason of Defendant's aforesaid acts, Peabody Management has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.  The full extent of Peabody Management's damages is not yet determined.

75.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Peabody Management, for which Peabody Management has no adequate remedy at law.

**WHEREFORE**,  Peabody Management prays for a judgment:

1.     That Defendant, its officers, agents, servants, employees, representatives, successors and assigns, and all persons, firms or corporations acting in concert or participation

-21-

with Defendant who receive notice hereof, be preliminarily and permanently enjoined and restrained from:

(a)     directly or indirectly infringing the above-described registered and common law PEABODY and PEABODY DUCK Marks in any manner, including, but not limited to, promoting, selling and/or offering for sale any services or goods in conjunction with marks, logos, slogans or designs which infringe said PEABODY and PEABODY DUCK Marks, and specifically:

i.     using the mark WHEN YOU SEE THE TRUCK WITH THE SIGN OF THE DUCK YOU KNOW YOU'RE IN LUCK WITH…PEABODY PAINTING & WATERPROOFING & Duck Design as set forth above, or any marks similar thereto, or any reproduction, counterfeit, copy, or colorable imitation of the PEABODY and PEABODY DUCK Marks, in connection with the promotion, sale and/or offering for sale of painting and waterproofing services or other services and goods;

ii.    using the trade name or mark PEABODY PAINTING or PEABODY PAINTING & WATERPROOFING, or any trade name or mark incorporating the term "PEABODY" in connection with the promotion, sale and/or offering for sale of painting and waterproofing services or other services and goods;

-22-

iii.    using the word "DUCK" or "DUCKS" or any imagery of ducks in connection with the promotion, sale and/or offering for sale of painting and waterproofing services or other services and goods;

iv.    applying said PEABODY and PEABODY DUCK Marks, or any such reproduction, counterfeit, copy or colorable imitation of the PEABODY and PEABODY DUCK Marks, including but not limited to the marks PEABODY PAINTING or PEABODY PAINTING AND WATERPROOFING, or any mark incorporating the word "DUCK" or "DUCKS" or any imagery of ducks, to any business stationery material, press release, brochure, sign, print, vehicle, apparel, website, advertisement or other material used in connection with the promotion, sale and/or offering for sale of said goods or services;

v.    doing any other act or thing likely to induce the belief that Defendant's businesses or products are in any way connected with Peabody Management, or its real estate or Peabody Hotel businesses or services, or are sponsored or approved by Peabody Management or its Peabody Hotels;

(b)   using any mark which is confusingly similar to any of the PEABODY and PEABODY DUCK Marks as set forth above, including but not limited to, any mark incorporating the word "PEABODY," the word "DUCK" or "DUCKS," or  any mark incorporating duck imagery, in connection with the promotion, sale and/or offering for sale of painting and waterproofing

-23-

services or other services and goods;

(c)   using any other service mark, trade name, logo or design, that tends falsely to represent that, or that is likely to confuse, mislead, or deceive consumers to believe that services or goods promoted, sold, and/or offered for sale by Defendant originate from Peabody Management, its real estate properties or The Peabody Hotels, or that said services or goods have been sponsored, approved, or licensed by, or are in some way connected or affiliated with Peabody Management, its real estate properties or The Peabody Hotels;

(d)   engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive consumers, to believe that the actions of Defendant, are sponsored, approved, or licensed by Peabody Management, its real estate properties or The Peabody Hotels, or are in some way connected or affiliated with Peabody Management, its real estate properties or The Peabody Hotels; and/or

(e)   diluting the aforementioned PEABODY and PEABODY DUCK Marks by blurring their distinctive quality or tarnishing their image, and/or damaging Peabody Management's goodwill, reputation and business arising from such marks.

2.   That Defendant be ordered to destroy within 10 days of entry of such injunction, all stationery materials, brochures, signage (including signage on vehicles), apparel, website pages, advertisements or other materials that feature any mark or matter subject to the injunction herein, and to provide a sworn certificate of destruction to Peabody Management.

-24-

3.      That the Court enter a finding, consistent with the Court's finding herein, that registration of Defendant's United States Patent and Trademark Office service mark application, Serial No. 78/504,160, would result in a likelihood of confusion and dilution.

4.      That Defendant be required to account for and pay to Peabody Management all profits and damages resulting from Defendant's infringing and unfair activities.

5.      That as a result of Defendant's willful and intentional acts of infringement and unfair competition, the award of damages to Peabody be trebled and the award of the wrongful profits enjoyed by Defendant be enhanced as the Court deems appropriate as provided for under 15 U.S.C. § 1117(a) and the common law of Tennessee.

6.      That as a result of Defendant's acts of willful and intentional trademark dilution, Defendant be required to account for and pay to Peabody Management all profits and damages resulting from Defendant's actions; that the award to Peabody be trebled as provided for under 15 U.S.C. § 1117(a), Tenn. Ann. Code §§ 47-25-513 and 47-25-514(a); and that the award of the wrongful profits enjoyed by Defendant be enhanced as the Court deems appropriate.

7.      That as a result of Defendant's willful and intentional actions making this an exceptional case within the meaning of 15 U.S.C. §§ 1117(a) and 1125(c)(2), Peabody Management be awarded its attorneys' fees as provided for under 15 U.S.C. § 1117(a) and Tenn. Ann. Code §§ 47-25-513 and 47-25-514(a).

8.      That Peabody Management be awarded punitive damages.

9.      That Peabody Management be awarded its costs herein.

10.     That Peabody Management have all other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL &
    BERKOWITZ, PC

By:     s/Grady M. Garrison
        Grady M. Garrison (Bar No. 008097)
        165 Madison Avenue
        First Tennessee Building
        Memphis, Tennessee 38103
        Telephone:  (901) 526-2000
        Facsimile: (901) 577-2303
        ggarrison@bakerdonelson.com


PATTISHALL, McAULIFFE, NEWBURY,
    HILLIARD & GERALDSON LLP

By:     Belinda J. Scrimenti
        Jared D. Solovay
        Ashly A. Iacullo
        311 South Wacker Drive, Suite 5000
        Chicago, Illinois  60606
        Telephone: (312) 554-8000
        Facsimile: (312) 554-8015
        bscrimenti@pattishall.com

        Attorneys for Plaintiff
        Peabody Management, Inc.